

*U.S. Department of Justice*

*United States Attorney*
*Eastern District of New York*

MRM/SS/KO
F. #2025R00053

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 4, 2025

By ECF

The Honorable Lara K. Eshkenazi
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Dimitriy Nezhinskiy and Juan Villar
                Criminal Docket No. 25-40 (AMD)(VMS)

Dear Judge Eshkenazi:

        The government respectfully submits this letter in support of the pretrial detention of the defendants Dimitriy Nezhinskiy, also known as "Ruso," and Juan Villar. Both defendants are charged by indictment in the above-captioned case with one count of conspiracy receive stolen property, in violation of 18 U.S.C. § 371, and three counts of receipt of stolen property, in violation of 18 U.S.C. § 2315. The charges stem from the defendants engaging in a years' long conspiracy to receive stolen property, serving as "fences" for countless pieces of stolen merchandise taken from across the United States. For the reasons set forth below, both defendants should be detained pending trial.

    I.    Factual Background

        a.    The Instant Charges

        On January 30, 2025, a grand jury in the Eastern District of New York returned a four-count indictment (the "Indictment") in the above-captioned case, charging Nezhinskiy and Villar with four counts related to their respective roles in a Manhattan based stolen property purchasing operation. Specifically, the defendants are charged in Count One with conspiring with one another, and others, to receive and purchase stolen property, including jewelry, watches, handbags and assorted luxury items that had been stolen outside of the state of New York and transported into New York. Count Two charges Nezhinskiy and Villar with the substantive offense of receiving stolen property on one occasion in November 2020. Counts Three and Four charge Nezhinskiy with the substantive offense of receiving stolen property on one occasion in August 2022 and one occasion in August 2023, respectively.

During the course of the investigation, law enforcement employed an undercover detective who, on seven separate occasions between October 2022 and January 2024, conducted controlled sales of purported stolen property, including high end handbags and luxury accessories, to Nezhinskiy or Villar, or both, at their business location in Manhattan's Diamond District. In each controlled sale, the undercover detective provided the defendants with items that the undercover presented as stolen in exchange for cash.

The investigation developed evidence that Nezhinskiy and Villar regularly served as "fences" for South American Theft Groups ("SATG") who engaged in crime tourism.[1] Specifically, the conduct charged in Count One, overt act (a), and Count Three pertain to Nezhinskiy and Villar purchasing stolen property from Bryan Leandro Herrera Maldonado, a prolific burglary who committed at least 16 residential burglaries across the United States between 2019 and 2020. See United States v. Maldonado, 22-CR-376 (JS). Further, phone records and a review of video surveillance linked at least two members of a four-man burglary crew believed to be involved in the December 9, 2024 burglary of a high profile athlete in Ohio to Nezhinskiy. Specifically, the member of the crew was in contact with Nezhinskiy less than a week prior to the commission of the burglary in Ohio. Indeed, to date, via various sources of evidence, including witness testimony, iCloud search warrants, phone location information and video surveillance, law enforcement can link Nezhinskiy and Villar's operation to at least five separate burglary crews that committed theft crimes across the United States between 2020 and the present time. Nezhinskiy and Villar's operation, purchasing stolen property from these crews for cash, provided an essential market for the stolen goods, perpetuating the dangerous criminal activities of the burglary and theft crews composed largely of foreign nationals.

On February 4, 2025, Villar was arrested at the business location he and Nezhinskiy operate in Manhattan. Law enforcement also executed a search warrant on the premises and located large quantities of suspected stolen property including dozens of high-end watches and jewelry. Law enforcement also recovered large quantities of cash and marijuana. Simultaneously, law enforcement executed a search warrant at storage units belonging to Nezhinskiy in New Jersey where an additional cache of suspected stolen property was found. From within Nezhinskiy's storage units, law enforcement recovered large quantities of luxury goods and clothing, including high-end handbags, wine, sports memorabilia, jewelry and art. It also located power tools consistent with those commonly used in burglaries and opening safes.

---

[1] See Crime Tourists: An international spree targets D.C. area's wealthy Asian residents, Justin Jouvenal, Washington Post, January 11, 2022, https://www.washingtonpost.com/dc-md-va/2022/01/11/burglaries-crime-tourists-target-asians/ (last visited January 29, 2025); Thieves in the Night: A Vast Burglary Ring From Chile Has Been Targeting Wealthy U.S. Households, Mark Wortman, Vanity Fair, February 24, 2022, https://www.vanityfair.com/news/2022/02/a-vast-burglary-ring-from-chile-has-been-targeting-wealthy-us-households (last visited January 29, 2025); 4 Men Arrested in Connection to Burglary at Bengals Quarterback Joe Burrow's Home, Kiki Intarasuwan, CBS News, January 21, 2025 https://www.cbsnews.com/news/joe-burrow-burglary-arrests-bengals-quarterback/ (last visited January 29, 2025).

b. Nezhinskiy's Criminal History

Nezhinskiy is a Georgian national has been subject to a final order of removal since 2003. However, Nezhinskiy remains in the United States as he cannot be returned to his home country. He currently resides in New Jersey and has an extensive criminal history in New York. In January 2001, Nezhinskiy was convicted of Possession of a Forged Instrument, 3rd degree, a class A misdemeanor, in violation of New York Penal Law ("N.Y.P.L.") § 170.20, and sentenced to three years of probation. In March 2001, Nezhinskiy was convicted of disorderly conduct, a violation, in violation of N.Y.P.L. § 240.20, in connection with larceny charge, and was sentenced to a conditional discharge. In October 2001, Nezhinskiy was convicted of petit larceny, a class A misdemeanor, in violation of N.Y.P.L. § 155.25, and sentenced to a conditional discharge. In February of 2002, Nezhinskiy was convicted of Robbery, 2nd degree, a class C violent felony, in violation of N.Y.P.L. § 160.10(1), and sentenced to 42 months' imprisonment. Nezhinskiy was released in November 2004 and remained under New York State parole supervision until November 2009. In January 2018, Nezhinskiy was convicted of driving while impaired, a violation, in violation of New York Vehicle and Traffic Law ("V.T.L.") § 1192.1, and sentenced to a conditional discharge. Nezhinskiy also has a criminal history in New Jersey, where in January 2018 he was convicted of loitering to obtain or distribute a controlled dangerous substance, in violation of New Jersey Criminal Code § 2C:33-2.1(b), for which he was fined.

c. Villar's Criminal History

Villar is a United States citizen who currently resides in Queens, New York. Villar has a criminal history in New York which began in February 2001, when Villar was convicted of Assault, 3rd degree, a class A misdemeanor, in violation of N.Y.P.L. § 120.00(1), in connection with a burglary incident. Villar was sentenced to a conditional discharge. In March 2009, Villar was convicted of Offering a False Instrument for Filing, 1st degree, a Class E felony, in violation of N.Y.P.L. § 175.35, and was sentenced to six months' jail and five years' probation. Villar remained on probation until August 2013.

d. The Statutory Penalties and the Possible Guidelines

Here, each defendant faces a statutory maximum term of imprisonment of 10 years if convicted of violating 18 U.S.C. § 2315. The statutory maximum for the conspiracy charge is five years' imprisonment. A conservative estimate of each defendant's potential sentencing Guidelines yields a range of 41-51 months' imprisonment, however, if the Court were to apply all enhancement for which the government believes there is sufficient evidence, the estimate for each defendant would be substantially higher, 78 to 97 months' imprisonment for Villar and 97 to 120 months' imprisonment for Nezhinskiy.

II. Legal Standard

The court "shall order" a defendant detained if it finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The government bears the burden of persuading the court by a preponderance of the evidence that the defendant is a flight

3

risk or that he will obstruct or attempt to obstruct justice, or by clear and convincing evidence that the defendant is a danger to the community. United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001). The government may proceed by proffer to establish facts relevant to a detention determination. United States v. Ferranti, 66 F.3d 540, 541 (2d Cir. 1995). Furthermore, "[t]he rules of evidence do not apply in a detention hearing." Id. at 542. As the Second Circuit has explained:

> [I]n the pre-trial context, few detention hearings involve live testimony or cross examination. Most proceed on proffers. See United States v. LaFontaine, 210 F.3d 125, 131 (2d Cir. 2000). This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." United States v. Acevedo-Ramos, 755 F.2d 203, 206 (1st Cir. 1985) (Breyer, J.) (quoted approvingly in LaFontaine, 210 F.3d at 131). Indeed, § 3142(f)(2)(B) expressly states that the Federal Rules of Evidence do not apply at bail hearings; thus, courts often base detention decisions on hearsay evidence. Id.

United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004).

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, "including whether the offense is a crime of violence . . ."; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including "whether, at the time of the current offense or arrest, the person was on probation [or] on parole"; and (4) the seriousness of the danger posed by the defendant's release. See 18 U.S.C. § 3142(g). Specifically, in evaluating dangerousness, courts consider not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

III.     Argument

No bail package will protect the community from the danger posed by the defendants, as a balancing of the four factors set forth in Section 3142(g) weighs in favor of both defendants' pretrial detention.

First, both defendants are charged with crimes that at first blush may not appear to be violent or dangerous, but in reality, the defendants' crime create a substantial risk to human life. Indeed, their criminal conduct creates a market for residential burglaries and retail thefts that create a very real risk of danger. By creating a cash-based marketplace for stolen items, these defendants motivate individuals to engage in nationwide patterns of burglaries and thefts. Their conduct

4

promotes the victimizing of individuals in their homes and endangering communities on a large scale. This clearly weighs in favor of detention.

Second, the weight of the evidence against the defendants is extremely strong and this factor, too, weighs in favor of detention. Here, there are multiple video recordings made by the undercover demonstrating the defendants knowingly purchasing stolen luxury goods for cash across several months. Additionally, there are multiple witnesses who have reported to law enforcement that they have sold stolen property to the defendants and even that the defendants have coached them to steal items away from New York so it will be easier for the defendants to resell the items and harder for law enforcement to track. Further, the investigation yielded phone evidence that puts Nezhinskiy in contact with numerous individuals involved in burglaries across the United States. The weight of the evidence also weighs in favor of detention.

Third, the risk of further violence and flight by the defendants is substantial. As discussed above, both defendants conduct creates a substantial danger to numerous communities across the United States. This conduct was not isolated, instead, it has been ongoing for years. Furthermore, each defendant is facing a substantial term of imprisonment for their conduct which will only increase their risk of flight. Also as noted above, Nezhinskiy is subject to a final order of removal. While Nezhinskiy cannot be removed to his home country, there is nothing that prevents him from fleeing to another nation. This factor also weighs heavily in favor of detention.

IV. Conclusion

For the reasons set forth above, the government respectfully submits that no condition or combination of conditions will properly assure the safety of the community or the defendants' return to court if they are released on bail, and therefore requests that the Court order that the defendants be detained pending trial.

Respectfully submitted,

JOHN J. DURHAM
United States Attorney

By: /s/
Michael R. Maffei
Katherine Onyshko
Sean Sherman
Assistant U.S. Attorneys
(718) 254-7000

cc: Clerk of the Court (by ECF)
Defense Counsel (by ECF)